# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHRISTOPHER T. HOLMES,

    Plaintiff,

    v.

UNITED STATES OF AMERICA,

    Defendant.

Civil Action No. 17-1674 (JDB)

## MEMORANDUM OPINION

Former Sergeant First Class Christopher Holmes claims that the United States improperly denied him benefits under the Servicemembers' Group Life Insurance Traumatic Injury Protection ("TSGLI") program for injuries he suffered in a motorcycle accident. As a covered service member, Holmes is entitled to TSGLI benefits if his injuries caused an inability to independently perform at least two enumerated "activities of daily living," such as bathing or dressing, for a minimum of thirty consecutive days. After the United States Army denied his claim and appeals six times over the last eight years, Holmes filed suit under the Administrative Procedure Act ("APA") to challenge the final decision as arbitrary and capricious. In cross-motions for summary judgment, the parties dispute whether the Army appropriately concluded that Holmes failed to establish his inability to independently perform at least two activities of daily living within the meaning of TSGLI. For the reasons that follow, the Court will deny Holmes's motion for summary judgment and grant the government's cross-motion.

**BACKGROUND**

I.    **Statutory and Regulatory Background**

Congress established the TSGLI program to provide short-term financial assistance to uniformed service members who have suffered certain qualifying traumatic injuries.  See 38 U.S.C. § 1980A et seq.  The Secretary of Veterans Affairs ("VA") is authorized to define the scope of qualifying losses within certain statutory limits.  38 U.S.C. § 1980A(b)(1).  As relevant here, the VA has defined qualifying losses to include injuries resulting in the inability to "independently perform" two or more activities of daily living ("ADLs") for at least 30 consecutive days.  38 C.F.R. § 9.20(e)(6)(vi), (f)(20).  Qualifying ADLs are bathing, continence, dressing, eating, toileting, and transferring in and out of a bed or chair with or without equipment.  Id. § 9.20(e)(6)(vi)(A)–(F).  An ADL loss of thirty consecutive days entitles service members to $25,000 (with an additional $25,000 at each of the 60, 90, and 120 consecutive-day marks, for a maximum of $100,000).  Id. § 9.20(f)(20).

Although the term "independently perform" is not defined by statute or regulation, the VA has issued guidance stating that "[a] member is considered to have a loss of ADL if the member REQUIRES assistance to perform" ADLs.  Traumatic Injury Protection Under Servicemembers' Group Life Insurance (TSGLI): A Procedural Guide ("TSGLI Procedures Guide"), Ex. 2 to Administrative Record [ECF No. 23-3] at 18.  And if the member "is able to perform the activity by using accommodating equipment . . . or adaptive behavior," the Guide states, he or she is "considered able to independently perform the activity."  Id.

Members submit TSGLI claims to their branch of uniformed service—here, the Army— which is in turn responsible for "certify[ing] to the [VA] whether" members have "sustained a qualifying loss."  38 U.S.C. § 1980A(f); see 38 C.F.R. § 9.20(g).  If a TSGLI claim is denied,

members may first request the Army's TSGLI Program Office to reconsider, then appeal to the Army Human Resources Command ("HRC") Special Compensations Branch of the TSGLI Appeals Board, and then to the Army Review Board Agency ("ARBA"), which will make a final determination through the Army Board for Correction of Military Records ("ABCMR" or "Board"). See TSGLI Procedures Guide at 73; Administrative Record [ECF No. 22-2] 1178–80.[1] On review, the ABCMR is charged with entering a correction only if it concludes, by a "preponderance of the evidence," that a "material error or injustice exists." 32 C.F.R. § 581.3(b)(4)(ii), (e)(2).

## II.    Facts

On April 16, 2010, Christopher Terrill Holmes, then a thirty-six-year-old Sergeant First Class ("SFC") in the United States Army, lost control of his motorcycle, hit a ditch, and was thrown onto the pavement. A.R. 72–73, 164, 1292. Holmes was taken to a Virginia hospital where he was diagnosed with a "comminuted" "intra-articular fracture" of the scapula—a shoulder fracture—and scheduled for surgery. A.R. 72–74. Holmes's arm was placed in a sling, he spent the night at the hospital, and he was discharged the next day. A.R. 72–74, 173. Hospital records from his stay recorded Holmes's "ADLs" as "Independent," and described his "Activity Level" as "Minimal ADL Assistance needed." A.R. 568–70. Under the heading "Activity Instructions," discharge documents recommended that Holmes refrain only from "strenuous exercise," "heavy lifting," and "heavy housework for 1 month." A.R. 173.

Seven days after the accident, notes from an appointment with Holmes's treating orthopedic surgeon, Dr. Vivek Sharma, record Holmes's complaints of "moderate to severe"

---

[1] The administrative record is located across multiple docket entries: A.R. 1–255 [ECF No. 20-1]; A.R. 256-530 [ECF No. 20-2]; A.R. 531–750 [ECF No. 20-3]; A.R. 751–850 [ECF No. 21-1]; A.R. 851–950 [ECF No. 21-2]; A.R. 951–1025 [ECF No. 21-3]; A.R. 1026–1078 [ECF No. 22-1]; A.R. 1079–1232 [ECF No. 22-2]; A.R. 1233–1332 [ECF No. 22-3]; and A.R. 1333-1426 [ECF No. 23-1]. The Court will refer to these documents collectively as "A.R."

shoulder pain that "is aggravated by physical activity and any movement," resulting in "painful [range of motion], decreased [range of motion], difficulty [with] overhead activities, difficulty dressing [him]self, difficulty with pushing, difficult with pulling and difficulty with lifting." A.R. 75, 103.

Holmes had shoulder surgery twelve days after the accident. A.R. 75, 106. Holmes remained in recovery for three days, during which time nurses helped him travel "to [the bathroom] and back," "to dress," and to "sit up for dressing removal." A.R. 76. Holmes was then discharged with a sling, which doctors estimated he would need for six weeks, and was instructed to start "passive range of motion" physical therapy. A.R. 75–76.

Records from twenty-four days after the accident note no postoperative complications, "slightly improved" symptoms, "mild" post-operative pain, and an "improvement in activity level." A.R. 653. Holmes's gait and posture were recorded as "normal" and it was recommended that the rehabilitation plan, including physical therapy exercises, continue as planned. Id. Upon discharge, Dr. Sharma signed a "Certificate to Return to Work or School" form, on which he marked as applicable the statement: "He will be totally incapacitated for approximately 6 weeks pending follow up." A.R. 91.

Fifty-six days after the accident, clinic notes state Holmes's surgical incisions had "healed well," that his left shoulder's "range of motion [was] limited" and "passive . . . with minimal discomfort," that rehabilitation should be continued with "aggressive range of motion exercises," and that the shoulder sling should be "discontinued." A.R. 652, 1151. Dr. Sharma signed a second certificate, on which he marked that Holmes will be "totally incapacitated for approximately 4 weeks." A.R. 92.

Over the next several months, Holmes made frequent trips to the physical therapist. A.R. 77–79. In October 2010, after having struggled for months to make a full recovery, Holmes decided to undergo an additional outpatient procedure on his shoulder. A.R. 79–80. After this second, less invasive, surgery Holmes was immediately released and directed to continue physical therapy. A.R. 80–82, 1154–55. After several more months, in June 2011, physical therapy records noted that Holmes experienced "pain free shoulder motion" and was "able to perform ADLs [with] decreasing difficulty." A.R. 86.

### III.     Procedural History

Holmes applied for TSGLI benefits on August 2, 2010. See A.R. 1–37. His application claimed a loss of ability to perform four ADLs: bathing, dressing, toileting, and transferring independently. See A.R. 12–14. As part of the application, Dr. Sharma certified ADL losses for 62 days between April 16, 2010 to June 16, 2010, noting that Holmes "is recovering from this injury" and "is on restricted duty for 6 [weeks]." See A.R. 9–14.

Holmes's TSGLI claim was denied on the grounds that there was "not enough medical information to support" the claimed losses. See A.R. 38–40. The denial letter stated that Holmes needed to submit medical records "address[ing] the specific injury/injuries . . . sustained and illustrat[ing] a timeline of treatment . . . consist[ing] of notations from licensed medical providers" along with other "[s]upporting documentation." A.R. 38.

Holmes applied for reconsideration. See A.R. 41, 44–51. The reconsideration request argued that the "extreme pain, immobility, and side effects of the strong pain medication . . . made it impossible for [Holmes] to dress and bathe himself without assistance." A.R. 48. Holmes also supplemented the request with written testimonials from Holmes and his wife, Latrice Holmes. See A.R. 67–70. Latrice Holmes averred that Holmes was "not able to do basic tasks" for "at least

four months" and that, because of his accident, she had to "assist him" with dressing, bathing, and "get[ting] in and out of bed and on and off the toilet." A.R. 67. Additionally, Latrice Holmes stated, Holmes "still" requires her help with "daily activities" as of July 2011, when she wrote the statement. Id. Holmes's statement mirrors his wife's. Holmes explained that, after a few days in the hospital, he was "discharged . . . into the 24-hour care" of his wife, and "could not perform any daily activities" without her, including bathing, dressing, toileting, and transferring. A.R. 69. In addition to the written testimonials, Holmes supplemented the medical record with a second ADL loss certification from a different doctor, Dr. Dennis Hopkins, who conducted a paper review of Holmes's medical records. Dr. Hopkins certified an ADL incapacity between April 16, 2010 and November 15, 2010—a period of 213 days. See A.R. 58–63. Dr. Hopkins noted in the revised application that, despite "the large volume of medical records," there was "poor ADL info" and the "servicemember and caregiver statements give better insight into [Holmes's] difficulties with ADLs." A.R. 63.

The Army's TSGLI Office denied Holmes's request for reconsideration. See A.R. 527. The denial letter summarily stated that the "medical documentation [he] submitted did not indicate that [his] physical injury would make [him] incapable of performing the ADL's of bathing and dressing that are covered by TSGLI standards." Id.

Holmes then appealed to the HRC Special Compensations Branch. See A.R. 531–36. Before rendering a decision, Dr. Benjamin G. Withers, a "TSGLI Program Physician Consultant," performed a "physician review" of Holmes's claim. A.R. 587. Dr. Withers concluded that the "[s]ubmitted documents do not indicate that the injury rendered [Holmes] incapable of performing ADLs for 30+ days, per TSGLI guidelines." A.R. 587. Specifically, Dr. Withers noted that the medical records do not document ADL loss within the meaning of TSGLI regulations, as Holmes

"only claimed to have been confined [in the hospital] for [three days]," and "[o]therwise healthy [patients] are not rendered ADL-incapable by single limb trauma/dysfunction/immobilization." Id. The HRC appeal board voted four to nothing to deny all claimed losses. See A.R. 591, 612.

Holmes then appealed to the ABCMR, the final level of administrative review. A.R. 592–93. After summarizing the previous proceedings, a three-member panel unanimously upheld the denial, concluding that "the numerous medical progress notes, treatment reports, and the daily exercise sheets from the physical therapy clinic do not mention specific ADLs [Holmes] was having difficulty performing or how much assistance he required in performing them," Holmes "has not provided sufficient documentation to support his contention that his TSGLI claim was improperly disallowed," and the "documentation provided does not explain how the injuries he received made him completely dependent on someone else to perform 2 of the 6 ADLs for 30 days or more." A.R. 1086–87. Holmes requested that the ABCMR reconsider its denial, based in part on the submission of a new letter from his occupational therapist concerning his difficulty performing ADLs without reliance on assistive devices. See A.R. 1090–91. In 2017, the ABCMR considered the new evidence and denied the claim again, see A.R. 1138–46, this time relying in part on a "comprehensive advisory opinion" written by the HRC explaining that, per the TSGLI Procedures Guide, the use of assistive devices or adaptive techniques do not render members incapable of "independently" performing ADLs, A.R. 1125–30.

Holmes proceeded to file this action, challenging the ABCMR's decision under the Administrative Procedure Act ("APA") as arbitrary, capricious, and unsupported by the record. See Compl. [ECF No. 1]. Before briefing was complete, however, the government filed a consent motion to dismiss the VA as a named defendant and for a voluntary remand to the ABCMR for further review of its decision. See Defs.' Consent Mot. for Voluntary Remand and Stay in Part &

Mot. to Dismiss in Part [ECF No. 5]. The Court granted the motion, dismissing the VA and remanding the case to the ABCMR for further consideration. See Order, Oct. 5, 2017 [ECF No. 6].

On remand, the ABCMR considered for the first time an ARBA medical advisory opinion concerning Holmes's TSGLI claim. See A.R. 1146–66. The ARBA opinion comprehensively summarized and analyzed the medical records and other evidence in the case before concluding that there was "no evidence that [Holmes] was unable to perform 1 or 2 ADLs (without or with adaptive devices and/or techniques) at 30 or more days after the traumatic event." A.R. 1165. In response to the ARBA opinion, Holmes submitted a letter to the ABCMR in which he argued that the opinion failed sufficiently to respond to his family's testimonials, failed to consider or respond to Dr. Sharma's and Dr. Hopkins's ADL loss certifications, and improperly relied on the TSGLI Procedures Guide because it "lacks the force of law." A.R. 1169–70. After acknowledging that "[t]he standard of evidence in TSGLI cases is a 'preponderance of the evidence,'" and that he must prove his claims are "more likely true than not," Holmes nevertheless stated that "the agency should apply [a] 'benefit of the doubt' standard," because doing so would be "consistent with 38 U.S.C. § 5107(b)." A.R. 1171. Under that provision, Holmes observed, "[v]eterans are given the 'benefit of the doubt' when there is an approximate balance of positive and negative evidence on a material issue." Id. (citation omitted).

On March 6, 2018, the ABCMR issued its final opinion, unanimously denying Holmes's claim because "[t]he evidence presented does not demonstrate the existence of a probable error or injustice." A.R. 1176; see A.R. 1175–95. The Board began by rejecting Holmes's contention that the agency improperly considered the TSGLI Procedures Guide, noting that it was "not unreasonable for the TSGLI Office or for HRC to rely on these guidelines when arriving at its

decisions," and noting no "aware[ness] of any legal or prudential impediment" to the Guide's consideration. A.R. 1191.[2] The Board then proceeded to find that, "[t]aken together," the "six medical authorities [that] reviewed [Holmes's] medical record and evidence" "provide a persuasive and convincing rationale as to why the evidence submitted . . . does not support [his] claim for TSGLI benefits." Id. The Board specifically credited the HRC's and ARBA's medical analysis and advisory opinions. Id.

Turning to Holmes's evidence, the Board determined that Dr. Hopkins's ADL certification was "not persuasive." Id. According to the Board, Dr. Hopkins did not interview or examine Holmes, failed to "acknowledge the orthopedic history and physical report," and relied too heavily on Holmes's "self-reporting and the self-reporting" of his wife. A.R. 1191–92. The Board similarly discounted Dr. Sharma's statements that Holmes will be "totally incapacitated," agreeing with the ARBA advisory opinion that Dr. Sharma had "merely checked a pre-existing box" intended to make clear Holmes was incapacitated for purposes of returning to work. A.R. 1194. To the extent Dr. Sharma otherwise assessed Holmes as incapacitated from ADLs, the Board found that conclusion "dubious" in light of Holmes's undisputed "ability to ambulate freely, to fully use his dominant (right) hand and arm, and to use his left hand." Id. The Board also found the personal statements Holmes and his wife submitted unpersuasive because "they conflicted with the medical record." A.R. 1192. For instance, the Board pointed out that the credibility of Latrice Holmes's July 2011 statement averring that Holmes "still" had ADL loss was undermined by Holmes's earlier March 2011 performance on an "Army Physical Fitness Test," which Holmes passed by performing "no fewer than 58 push-ups" and "62 sit-ups." A.R. 1193.

---

[2] The Board's final decision made no mention of Holmes's suggestion that it should apply a "benefit of the doubt" standard if it found the evidence in equipoise.

Based on the foregoing, the Board found that it was "hard-pressed to conceive of a situation in which the applicant might have suffered the loss of a <u>single</u> ADL for more than a few consecutive days," let alone two ADLs for more than 30 consecutive days. A.R. 1193 (emphasis added). The Board therefore concluded that Holmes "failed to prove by a preponderance of evidence that he suffered the loss of 2 or more ADL for any 30 consecutive day period." A.R. 1194.

After the ABCMR issued its final opinion, the parties filed cross-motions for summary judgment. <u>See</u> Pl.'s Mem. of P. & A. / Mot. for Summ. J. ("Pl.'s Mot.") [ECF No. 13]; Mem. of Law in Supp. of Def.'s Resp. in Opp'n to Pl.'s Mot. & Cross-Mot. for Summ. J. [ECF No. 14] ("Gov't's Mot.") [ECF No. 14]. Briefing is complete and the motions are ripe for resolution.

## <u>STANDARD OF REVIEW</u>

The Court reviews ABCMR decisions under section 706(2) of the APA, which provides that "agency action, findings, and conclusions" must be held "unlawful and set aside" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); <u>see</u> <u>Piersall v. Winter</u>, 435 F.3d 319, 324 (D.C. Cir. 2006). The Court must also set aside an ABCMR decision that is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E).

In APA cases, the "district judge sits as an appellate tribunal," <u>Am. Bioscience, Inc. v. Thompson</u>, 269 F.3d 1077, 1083 (D.C. Cir. 2011), and the parties' cross-motions for summary judgment under Federal Rule of Civil Procedure 56(a) serve only "as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review," <u>Lubow v. U.S. Dep't of State</u>, 923 F. Supp. 2d 28, 34 (D.D.C. 2013).

Arbitrary and capricious review is "narrow," and a court may not "substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Instead, courts are charged with determining if the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" Id. (citation omitted). Review for "substantial evidence" is similarly narrow, requiring "only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rossello ex rel. Rossello v. Astrue, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

## ANALYSIS

Before contesting the Board's conclusion that he could not establish a qualifying loss as unsupported by the record, Holmes advances two preliminary arguments: that the ABCMR applied the wrong legal standard to his claim and that the Board improperly relied on the TSGLI Procedures Guide in making its decision. For the reasons that follow, the Court finds Holmes's preliminary arguments unavailing and ultimately concludes that the Board's decision is supported by substantial evidence.

### I.    ABCMR Standard of Review

Holmes acknowledges that the ABCMR is required by Army regulations to make decisions "according to a preponderance of the evidence standard, with the burden of proof on the applicant." Pl.'s Mot. at 18 (citing 32 C.F.R. § 581.3(e)(2)). Nevertheless, he argues, the Board is "statutorily mandated" to apply a "substantial evidence" standard. Id. at 18–19; see also id. at 26–27. For this view, Holmes relies on the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (2000), which provides that claimants are entitled to "the benefit of the doubt" "with

respect to benefits under laws <u>administered by</u> the Secretary [of Veterans Affairs]." 38 U.S.C. § 5107(b) (emphasis added). Because TSGLI is "administered by" the VA, Holmes argues, section 5107(b) "statutorily mandate[s]" the ABCMR to apply a benefit of the doubt standard to TSGLI claim decisions. Pl.'s Mot. at 18. The benefit of the doubt standard, Holmes contends, in turn "alters the standard of proof that the claimant must meet" before the ABCMR, "necessarily reducing it from 'preponderance of the evidence' to a lesser 'substantial evidence' standard." <u>Id.</u> at 19. Because Holmes's "burden of proof . . . before the ABCMR is only that of substantial evidence," and he "clearly met" that burden," Holmes says, the ABCMR's application of a preponderance standard was error. <u>Id.</u> at 20, 26.

The government responds that section 5107(b)'s benefit of the doubt standard is "not a rule of general applicability," but rather applies only to claims directly administered by (and before) the VA. Gov't Mot. at 10. And TSGLI claims are not "administered by" the VA, the government says, because the statute creating TSGLI "gives the <u>Secretary of Defense</u> the authority to determine whether a claimant . . . has suffered a covered injury." <u>Id.</u> (emphasis added) (citing 38 U.S.C. § 1980A(f)). Accordingly, the government argues, section 5107(b) does not apply and the ABCMR properly applied a preponderance of the evidence standard when reviewing Holmes's claim.

The Court finds Holmes's standard-of-review argument waived. As the parties observe, <u>see</u> Pl.'s Reply Mem. of P. & A. & Resp. to Gov't Mot. ("Pl.'s Opp'n") [ECF No. 16] at 5; Def.'s Reply in Supp. of Its Cross-Mot. for Summ. J. ("Gov't's Reply") [ECF No. 17] at 1, Holmes did submit a letter to the ABCMR generally raising the standard of review applicable to TSGLI claims. <u>See</u> A.R. 1171. However, the letter directly contradicted the argument he makes before this Court, conceding that "[t]he standard of evidence in TSGLI cases is a 'preponderance of the evidence'

standard, <u>meaning that if the evidence proves the Servicemember's claim is more likely true than not, [he or she is] entitled to benefits</u>." Id. (emphasis added).[3] It is true that Holmes thereafter stated that "if the agency views this as a 'close call' case" it nevertheless "<u>should</u> apply the 'benefit of the doubt' standard, similar to the standard in claims for VA benefits," as doing so would be "<u>consistent with</u> 38 U.S.C. § 5107(b)." Id. (emphases added). But even were that general statement enough to overcome his concession, it argued merely that the ABCMR should, in its discretion, adopt a lower standard in "close calls" given the standard applied in VA benefits cases. That is entirely distinct from what Holmes argues now: that notwithstanding Army regulations directly to the contrary, section 5107(b) "<u>mandate[s]</u>" the ABCMR to employ a benefit of the doubt standard—which in turn means Holmes need only meet a "<u>substantial evidence</u>" standard before the ABCMR upon review. Pl.'s Mot. at 18–19 (emphases added); <u>see</u> id. at 18, 26 (acknowledging that pursuant to Army regulations ABCMR determinations must be "made according to a preponderance of the evidence standard, with the burden of proof on the applicant," but nevertheless arguing that section 5107(b) requires that "the burden of proof to be carried by [Holmes] before the ABCMR is only that of substantial evidence").[4]

The ABCMR had no chance to consider what Holmes's argument would require this Court to find: that Army regulations obligating the ABCMR to employ a preponderance standard on final review are invalid as facially inconsistent with a governing statute—that is, with the benefit of the doubt standard that 38 U.S.C. § 5107(b) purportedly mandates.[5] The Court declines to resolve

---

[3] Holmes also stated in the letter that the preponderance standard is "commonly misapplied" by the Army—not because it does not apply, but rather because service members are held to a "much <u>higher</u> standard of proof" than preponderance of the evidence. A.R. 1171 (emphasis added). Holmes does not explain further or reprise that argument before this Court.

[4] Holmes never argued to the ABCMR or this Court that any TSGLI office below denied him the benefit of the doubt when first deciding his claim.

[5] Nor did the agency have the chance to consider Holmes's argument that section 5107(b) applies to TSGLI claims because such claims are "administered by" the VA or, even if applicable and binding, that section 5107(b) requires application of a "substantial evidence" standard.

whether a duly promulgated regulation is invalid when that argument was not adequately presented to the agency. See Nat'l Wildlife Fed'n v. EPA, 286 F.3d 554, 562 (D.C. Cir. 2002) ("[T]here is a near absolute bar against raising new issues—factual or legal—on appeal in the administrative context."); see also White v. United States, Civ. No. 17-193, 2018 WL 5251740, at *7 (D.D.C. Oct. 22, 2018) (finding "benefit of the doubt" argument waived and "assum[ing] that ABCMR properly relied upon the preponderance of the evidence standard during its review"); Moreno v. Spencer, 310 F. Supp. 3d 83, 88 (D.D.C. 2018) (declining to consider whether "substantial evidence" standard applies to ABCMR review because the argument was not "presented to or deliberated by the agency").[6]

## II. TSGLI Procedures Guide

Holmes separately argues that the ABCMR improperly relied on the TSGLI Procedures Guide to conclude that Holmes could not demonstrate an inability to perform ADLs "independently." See Pls.' Mot. at 21–25. The only part of the Guide that Holmes specifically objects to is the ADL loss definition stating that service members are "considered able to independently perform [ADLs]" if they are "able to perform the activity by using accommodating equipment (such as a cane, walker, commode, etc.)" or by learning "adaptive behavior." TSGLI Procedures Guide at 18; Pl.'s Mot. at 22, 25–26. Such statements in the TSGLI Guide are not

---

[6] Even had Holmes not waived this argument before the agency, and even assuming that section 5107(b) applies to the ABCMR's final review of TSGLI claims notwithstanding Army regulations (an issue the Court does not decide), the Court would find it unnecessary to remand to the ABCMR for reconsideration. "The Administrative Procedure Act requires that [courts'] review of agency action take 'due account . . . of the rule of prejudicial error.'" Chem. Waste Mgmt., Inc. v. EPA, 976 F.2d 2, 32 (D.C. Cir. 1992) (quoting 5 U.S.C. § 706). Accordingly, if the Court has no doubt the agency "would have reached the same result it did absent the alleged error," remand is unnecessary. Id. (alteration and citation omitted). Here, the Court has no doubt that the Army would have reached the same result even under a "benefit of the doubt" standard. On its face, 38 U.S.C. § 5107(b) applies only when "there is an approximate balance of positive and negative evidence" on material issues. This Court's own careful review of the administrative record reveals no indication that the evidence was in "approximate balance" as to whether Holmes was unable to perform two or more ADLs for at least 30 consecutive days. Instead, the Court agrees with the ABCMR that the record contains insufficient evidence even to show that Holmes "suffered the loss of a single ADL for more than a few consecutive days." A.R. 1193. Hence, even had this standard-of-review argument been properly presented, and even were it correct on the merits, Holmes can show no prejudice worthy of remanding for further consideration.

entitled to any deference, Holmes argues, because the VA's definition of the term "independently" contradicts TSGLI eligibility requirements set forth by statute and regulation. Pl.'s Mot. at 24–26. The government responds that the Guide is entitled to deference under <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944), and "is a persuasive authority that informs the Army's consideration of TSGLI claims." Gov't Mot. at 13–14.

The Court agrees with the government. To begin, there is no support for Holmes's contention that the TSGLI Guide contradicts the TSGLI statute or regulations. Both the TSGLI statute and the VA implementing regulations define the "inability to carry out [ADLs]" only as "the inability to independently perform two or more of [the six enumerated ADLs]." 38 U.S.C. § 1980A(b)(2)(D); <u>see</u> 38 C.F.R. § 9.20(e)(6)(vi). But as the court explained in <u>White</u>, 2018 WL 5251740, at *6, "neither the statute nor the regulation, which mirror each other, defines 'independently.'" The Guide's interpretation—that a member is considered unable to perform ADLs "independently" only if he or she requires assistance from another person, as opposed to from a device or a new technique, <u>see</u> TSGLI Procedures Guide at 18—supplements, rather than contradicts, that definition.

Holmes also fails to establish that the VA's guidance is otherwise unlawful. Agency "interpretations contained in policy statements, agency manuals, and enforcement guidelines . . . are entitled to respect . . . to the extent that those interpretations have the 'power to persuade.'" <u>Orton Motor, Inc. v. U.S. Dep't of Health & Human Servs.</u>, 884 F.3d 1205, 1211 (D.C. Cir. 2018) (citations omitted). "Persuasive elements include an agency's 'body of experience and informed judgment,' 'the . . . validity of its reasoning,' and 'its consistency with earlier and later pronouncements,' among other factors." <u>White</u>, 2018 WL 5251740, at *5 (quoting <u>Skidmore</u>, 323 U.S. at 140).

The Court finds the challenged definition sufficiently persuasive. To start, the Guide is issued by the VA, and therefore represents judgment informed by "years of experience with veterans' needs." Id. at 6. Further, the challenged "interpretation of 'independently' has been applied consistently since at least 2010." Id. (citing TSGLI Procedures Guide at 1–2) (describing Guide's revision history). Moreover, the Guide's interpretation comports with the rest of the TSGLI regulations and award amounts. Defining independence to include assistance from assistive devices or techniques certainly means that fewer and more serious injuries will qualify. But qualifying losses under TSGLI generally contemplate only grave injuries. For instance, TSGLI regulations entitle members to $100,000 (the amount Holmes claims) for, among other things, "[q]uadriplegia," "[t]otal and permanent loss of sight" in both eyes, or the inability to independently perform ADLs due to a coma for more than 90 days—and only half that amount for a "total and permanent loss of speech," "total and permanent loss of urinary system function," or amputation of an arm, leg, foot, or hand. 38 C.F.R. § 9.20(f)(1), (3), (4), (17), (19). The VA's choice to interpret "independently" to rule out, for instance, treating the temporary use of adaptive techniques to dress as meriting the same benefit as quadriplegia or loss of sight is both reasonable and persuasive.

Based on the foregoing, the Court concludes that, while "the VA could have defined 'independently' in other fashions," the TSGLI Guide offers a persuasive, "practical[,] and clear interpretation of otherwise ambiguous language and is not arbitrary, unreasonable, or inconsistent with the statute." White, 2018 WL 5251740, at *7; see also Weller v. United States, Civil No. 14-68, 2014 WL 5320133 at *3 (M.D. La. Oct. 17, 2014) (holding that Army's reliance on TSGLI Guide definition of "independently" is not unreasonable for purposes of APA review). Hence, the

Court finds that the ABCMR's reliance on the TSGLI Procedures Guide was neither arbitrary and capricious nor contrary to law.[7]

### III.    ABCMR's Conclusion Holmes Sustained No Qualifying Loss

Finally, Holmes argues that even if the ABCMR properly considered the TSGLI Guide and applied the correct standard of review, its decision was unsupported by the record. See Pl.'s Mot. at 27–32. In support, Holmes emphasizes that his claim was denied even though Dr. Sharma, his treating orthopedic surgeon, and Dr. Hopkins, who conducted a forensic review of his medical records, agreed that he was unable to independently perform the specified ADLs for at least 62 days. See id. at 3, 6, 28. He points also to the personal testimonials he and his wife submitted, which he argues the ABCMR disregarded. Id. at 30–31. Holmes then contends that the Army's medical opinions—and especially ARBA's medical advisory opinion—were "conclusory," "not based on observation of [Holmes]," and "not based in treatment." Id. at 29. Ultimately, Holmes says, the ABCMR failed to point to any actual evidence that he was able to perform the specified ADLs, and instead impermissibly presumed that he was independent based on the bare fact that only one of his limbs was injured. Id.

For its part, the government argues that the ABCMR properly relied on at least two in-depth reviews of Holmes's medical records—one from ARBA and one from the HRC—and

---

[7] Holmes advances two additional arguments, neither of which have merit. First, he argues that the TSGLI Guide "lacks the force of law" and that the government's position is "disingenuous" because in a different case it conceded the Guide is not "legally binding." See Pl.'s Mot. at 22–23 (citing Koffarnus v. United States, 175 F. Supp. 3d 769, 776 n.6 (W.D. Ky. 2016)). But that is irrelevant; the government concedes here that the Guide is not legally binding and argues only that it is persuasive authority. See Gov't's Mot. at 13. Second, Holmes argues that the Guide's definition of "independently" is "contrary to well-established case law." Pl.'s Mot. at 22. But the only case that Holmes cites is Austin v. United States, 614 F. App'x 198, 206 (5th Cir. 2015). That case, however, just says that the ABCMR's failure to follow the TSGLI Guide does not necessarily "constitute flawed or illegal agency action." Id. Of course, that does not support Holmes's position that the ABCMR's reliance on the Guide was unlawful.

appropriately deemed much of Holmes's evidence—including Dr. Hopkins' review and the personal testimonials—unpersuasive. See Gov't's Mot. at 14–17.

At the outset, recall that this Court is "not entrusted with the authority to evaluate the ABCMR's actions de novo," but instead is "bound to uphold those actions so long as substantial evidence supports them." Coburn v. Murphy, 827 F.3d 1122, 1127 (D.C. Cir. 2016).[8] And substantial evidence, in turn, requires "only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Astrue, 529 F.3d at 1185 (citation omitted).

The ABCMR's decision easily meets that test. As the government points out, the Board relied on HRC's and ARBA's advisory opinions, each of which were based on a comprehensive review of, and directly cite, Holmes's available medical records. See A.R. 1182–85 (summarizing HRC memorandum), 1186–87 (summarizing ARBA opinion). HRC's opinion found, among other things, that as soon as the day after the accident Holmes "was independent with ADLs and had a normal gait with no use of ambulatory aids," that his discharge instructions prohibited only "strenuous  exercise, heavy lifting, heavy housework and driving" (restrictions which do not include ADLs), that within one week of the accident Holmes had "normal gait, normal posture, normal coordination and was alert," and that Holmes showed impairment only "at his left shoulder and elbow." A.R. 1127. The HRC opinion also noted that new evidence Holmes submitted concerning his use of adaptive techniques and assistive equipment did not make him unable to independently perform ADLs under the TSGLI Procedures Guide. A.R. 1128–29. Finally, the memorandum noted that the personal testimonials submitted by Holmes and his wife were "not supported by the medical record." A.R. 1129. For instance, the testimonials state that Holmes

---

[8] The Court's own review of the ABCMR's decision for substantial evidence says nothing, of course, about what standard of review the ABCMR must employ when reviewing TSGLI claims—a distinct question which the Court does not decide here.

was unable to perform ADLs due to pain and the side effects of pain medication—but "the medical record shows his pain was well controlled." Id. Based on the foregoing, the HRC concluded that while Holmes had "chronic impairment of his left shoulder," the "record does not support that his shoulder impairment prevented performance of at least two basic ADLs for at least 30 consecutive days." Id.

For its part, the ARBA medical advisory opinion found, among other things, that: (1) Holmes's injury was limited to his left arm and shoulder, A.R. 1148, 1150; (2) the day after the accident three different "nursing notes" described his "Activity Level" as "Minimal ADL Assistance needed," A.R. 1148–49; (2) he is right-hand dominant, A.R. 1149; (3) twenty-five days after the injury, pain was "mild," Holmes showed "improvement in activity level," and his impairment remained "localized" to the left shoulder, A.R. 1150; (4) sixty-four days after the injury he was recommended to add "aggressive mobilization techniques" as part of physical therapy, A.R. 1152; (5) eighty-five days after the injury Holmes still experienced pain in his shoulder and arm, including some "pain and difficulty with ADLs," but continued physical therapy and reported pain "is well controlled," A.R. 1153–54; and (6) after additional shoulder surgery and several more months of physical therapy Holmes reported ability to "perform ADLs [with] decreasing difficulty" in June 2011, A.R. 1155. Additionally, the ARBA opinion cast specific doubt on Dr. Sharma's medical certification stating that Holmes was unable to perform ADLs "independently" for 62 days. See A.R. 1161–63 (questioning how member with "three fully functioning limbs including two functioning legs and one (dominant) functioning arm/hand" is unable to dress or bathe using adaptive techniques or equipment). The opinion also found Dr. Hopkins's later certification of Holmes's ADL loss "[un]supported by the medical evidence or common sense," noting that Dr. Hopkins conceded that the medical records contain "poor ADL

info" and that he was relying largely on Holmes's and his wife's personal testimonials. A.R. 1163–64. Based on its review, the ARBA opinion concluded that, ultimately, there was "<u>no</u> clear evidence of a medical disability or condition which would medically support loss of 1, 2, or more ADLs for 30 . . . or more days." A.R. 1166.

After conducting its own comprehensive review of the administrative record, the Court finds that, contrary to Holmes's contention, both the HRC and ARBA opinions are supported by the medical records. <u>See, e.g.</u>, A.R. 167 (noting that Holmes complained of "[left] shoulder pain and nothing elsewhere"); A.R. 173 (discharge notes one day after accident listing minimal activity restrictions); A.R. 202 (listing "[a]mbulatory [a]id [u]sed during gait" as "[n]one" one day after accident); A.R. 568–70 (nursing notes in immediate aftermath of accident marking Holmes's "ADLs" as "Independent" and describing his "Activity Level" as "Minimal ADL assistance needed" on several separate occasions); A.R. 653 (records describing Holmes's "mild" post-operative pain, "[n]ormal" gait, "improvement in activity level," and plan for physical therapy twenty-four days after the accident). Moreover, the Court concurs with the ABCMR that the medical record includes little evidence contradicting the agency's reasonable inference that Holmes was able to use both legs, his right arm, and his left hand and wrist to perform ADLs with, as necessary, adaptive techniques and assistive devices. <u>See</u> A.R. 1192.[9]

To be sure, the record includes at least some conflicting evidence. Holmes emphasizes, for instance, that Dr. Sharma—his treating surgeon—certified his ADL loss. <u>See</u> A.R. 9–14.

_____

[9] Holmes contends that the Board has no basis to presume that just because he had three functional limbs he was able to independently perform ADLs. <u>See</u> Pl.'s Mot. at 29 (citing <u>Koffarnus</u>, 175 F. Supp. 3d at 779 (rejecting the ABCMR's reliance on "generic statement" that "[o]therwise healthy patients are not rendered ADL-incapable by a single limb trauma/dysfunction/immobilization")). But the burden is on Holmes, not the Board, to establish a qualifying loss. And in <u>Koffarnus</u>, the Board relied <u>solely</u> on that "generic" inference despite contradictory evidence—including, for instance, the "doctor's order to remain nonweightbearing, . . . and [to] have an assistive person in bathing, toileting, dressing, and transferring"—and failed to include "any analysis or reasoning" in support of its decision to discount that evidence. <u>Koffarnus</u>, 175 F. Supp. 3d at 779–80. That is not true here.

Similarly, the personal testimonials stating that Holmes was not able to perform ADLs are evidence weighing in his favor.  See A.R. 67–70.  Nevertheless, the existence of conflicting evidence is not enough to find the Board's decision unsupported by substantial evidence.  See Alegent Health–Immanuel Med. Ctr. v. Sebelius, 34 F. Supp. 3d 160, 168 (D.D.C. 2014).  Because the record contains more than enough "relevant evidence" for a "reasonable mind" to conclude that Holmes did not sustain a qualifying ADL loss under TSGLI, Astrue, 529 F.3d at 1185, the Court finds that substantial evidence supports the Board's decision.

## CONCLUSION

For the foregoing reasons, the Court will deny Holmes's motion for summary judgment and grant the government's cross-motion for summary judgment.  A separate order will issue on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Dated:  January 8, 2019